UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

BERTHEA VICTORIA DAVIS,

                        Plaintiff,

v.                                                                5:16-CV-0657
                                                                    (WBC)
COMMISSIONER OF SOCIAL SECURITY,

                        Defendant.
_____

APPEARANCES:                                           OF COUNSEL:

OLINKSY LAW GROUP                        HOWARD OLINSKY, ESQ.
 Counsel for Plaintiff                             EDWARD WICKLUND, ESQ.
300 S. State St., Ste. 420
Syracuse, NY 13202

U.S. SOCIAL SECURITY ADMIN.           JASON PECK, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
 Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278

William B. Mitchell Carter, U.S. Magistrate Judge,

## MEMORANDUM-DECISION and ORDER

This matter was referred to me, for all proceedings and entry of a final judgment, pursuant to the Social Security Pilot Program, N.D.N.Y. General Order No. 18, and in accordance with the provisions of 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, N.D.N.Y. Local Rule 73.1 and the consent of the parties. (Dkt. Nos. 18, 20.).

Currently before the Court, in this Social Security action filed by Berthea Victoria Davis ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the parties' cross-

motions for judgment on the pleadings. (Dkt. Nos. 15, 16.) For the reasons set forth below, Plaintiff's motion is granted and Defendant's motion is denied.

## I. RELEVANT BACKGROUND

### A. Factual Background

Plaintiff was born in 1962. (T. 63.) She completed high school. (T. 142.) Generally, Plaintiff's alleged disability consists of HIV, degenerative disc disorder, lupus, and anxiety. (T. 141.) Her alleged disability onset date is September 14, 2010. (T. 63.)

### B. Procedural History

On December 18, 2013, Plaintiff applied for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. (T. 63.) Plaintiff's application was initially denied, after which she timely requested a hearing before an Administrative Law Judge ("the ALJ"). On August 24, 2015, Plaintiff appeared before the ALJ, Marie Greener. (T. 34-53.) On October 21, 2015, ALJ Greener issued a written decision finding Plaintiff not disabled under the Social Security Act. (T. 15-33.) On April 15, 2016, the Appeals Council ("AC") denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (T. 1-6.) Thereafter, Plaintiff timely sought judicial review in this Court.

### C. The ALJ's Decision

Generally, in her decision, the ALJ made the following five findings of fact and conclusions of law. (T. 20-28.) First, the ALJ found that Plaintiff had not engaged in substantial gainful activity since December 18, 2013. (T. 20.) Second, the ALJ found that Plaintiff had the severe impairments of degenerative disc disease of the lumbosacral spine and polysubstance abuse and dependence. (*Id.*) The ALJ

determined that Plaintiff's cervical disorder, herpes zoster, HIV, discoid lupus, and anxiety were non-severe impairments. (T. 21-23.) Third, the ALJ found that Plaintiff did not have an impairment that meets or medically equals one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1. (T. 23.) Fourth, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform unskilled light work (*Id.*)[1] Fifth, the ALJ determined that Plaintiff had no past relevant work; however, there were jobs that existed in significant numbers in the national economy Plaintiff could perform. (T. 27-28.)

## II. THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A. Plaintiff's Arguments

Plaintiff makes one argument in support of her motion for judgment on the pleadings. Plaintiff argues the ALJ's RFC determination is unsupported by substantial evidence because the ALJ improperly evaluated Plaintiff's cervical spine impairment which led to the improper rejection of the opinions from Plaintiff's treating physicians and the improper acceptance of the opinion rendered by the consultative examiner. (Dkt. No. 15 at 12-21 [Pl.'s Mem. of Law].)

### B. Defendant's Arguments

In response, Defendant makes one argument. Defendant argues substantial evidence supports the ALJ's determination to afford "limited evidentiary weight" to the

---

[1] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time. 20 C.F.R. § 416.967(b).

3

medical assessments from Plaintiff's treating physicians and "great weight" to the medical assessment of the consultative examiner. (Dkt. No. 16 at 5-9 [Def.'s Mem. of Law].)

## III. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B. Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R. § 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a 'residual functional capacity' assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).

## IV. ANALYSIS

### i.) Plaintiff's 2014 Cervical MRI and the ALJ's Step Two Determination

At step two of the sequential evaluation process, the ALJ must determine whether Plaintiff has a severe impairment that significantly limits her physical ability to do basic work activities. *See* 20 C.F.R. § 416.920(c).

The record contains objective medical imaging of Plaintiff's cervical spine from 2010 and 2014. An MRI performed in 2010 found: C2-C3 without disc herniation or spinal stenosis; C3-C4 demonstrates a central subligamentous disc herniation without cord compression or spinal stenosis; C4-C5 demonstrates a broad-based degenerative disc herniation of the protrusion type, compressing the ventral surface of the cervical spinal cord but without spinal stenosis, right nerve root foraminal narrowing; and C5-C6 demonstrates 2mm of retrolisthesis with a broad based central-left paracentral disc herniation abutting the left anterior cervical cord but without spinal stenosis. (T. 349-350.) An MRI performed in 2014 found: spinal canal stenosis from C3-C7 and flattening of the ventral aspect of the cord from C3-4 to C5-6. (T. 321.) The 2014 MRI indicated left foraminal stenosis at C3-4; right greater than left foraminal stenosis at C4-5 and C5-6. (*Id.*) The MRI indicated left greater than right foraminal stenosis at C6-7; left foraminal stenosis at C7-T1. (*Id.*) Overall, the impression of the 2014 MRI was "multilevel spinal and foraminal stenosis" and "flattening of the cord at C3-4, C4-5, and C5-6." (*Id.*)

In her step two analysis, the ALJ reasoned that Plaintiff's cervical spine impairment was "non-severe" because the MRI "showed minimal abnormalities." (T.

6

21.) Here, as stated by Plaintiff, the ALJ's conclusion that the MRI showed minimal abnormalities was "simply a false statement." (Dkt. No. 15 at 19 [Pl.'s Mem. of Law].)

The February 2014 cervical MRI report did not state that the findings were "minimal." (T. 321.) In fact, nowhere in the report was the term "minimal" used. (*Id.*) The results, as outline herein, relieved multilevel spinal and foraminal stenosis with flattening of the cord at C3-4, C4-5, and C5-6. (T. 321.)

In addition, no medical source interpreted the 2014 cervical MRI as showing "minimal abnormalities." On March 10, 2014, Mustafa Awaynda, M.D., stated in his treatment notations that the "MRI of the C-spine revealed multilevel spinal and foraminal stenosis due to disk osteophyte complex and flattening of the cord at C3-C4, C4-C5, C5-C6." (T. 720.)

In concluding that the 2014 cervical MRI showed only "minimal abnormalities," and thus Plaintiff's cervical spine impairment was non-severe, the ALJ impermissibly interpreted the MRI. *See Meadors v. Astrue,* 370 F. App'x 179, 183 (2d Cir. 2010) (holding that the "ALJ was not at liberty to substitute his own lay interpretation of [an MRI] diagnostic test for the uncontradicted testimony of [the treating physician], who is more qualified and better suited to opine as to the [MRI test's] medical significance"); *see also Wolfe v. Colvin*, No. 7:12-CV-0987, 2013 WL 5974225, at *5 (N.D.N.Y. Nov. 8, 2013) ("the ALJ is not a medical professional and is not in a position to opine as to whether abnormalities characterized as mild in an MRI or x-ray report might nevertheless cause significant pain or other limitations").

Plaintiff acknowledges that step two errors are typically harmless where, as here, the ALJ proceeds with the sequential process. (Dkt. No. 15 at 15 [Pl.'s Mem. of Law].)

However, Plaintiff argues that the ALJ relied on her fundamental mischaracterization of Plaintiff's 2014 cervical MRI at step two in weighing the medical opinion evidence in the record, and therefore she erred in her physical RFC determination. (*Id.*)

For the reasons stated herein, remand is required because the ALJ's lay interpretation of Plaintiff's 2014 cervical MRI at step two lead to an improper weighing of the medical opinions in the record and ultimately an improper RFC determination.

### ii.) The ALJ's Weighing of the Medical Evidence in the Record and RFC Determination

Plaintiff's RFC is the most she can do despite limitations and is determined by assessing all the relevant evidence. 20 C.F.R. § 416.945(a)(1).

In assessing medical evidence, the opinion of a treating source will be given controlling weight if it "is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 416.927(c)(2); *see Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015). The Second Circuit has held that courts will "not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physicians opinion and we will continue remanding when we encounter opinions from ALJ's that do not comprehensively set forth reasons for the weight assigned to a treating physician's opinion." *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004).

The following factors must be considered by the ALJ when deciding how much weight the opinion should receive, even if the treating source is not given controlling weight: "(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; and (iv) whether the opinion is from a

specialist." 20 C.F.R. § 416.927(c)(2)(i)-(iv).  The ALJ is required to set forth her reasons for the weight she assigns to the treating physician's opinion.  *Id.*, *see also* SSR 96-2p, 1996 WL 374188 (July 2, 1996); *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000) (quoting *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir.1998)).

On March 13, 2013, Myles Howard, M.D. completed a "Physician's Statement for Determination of Employability for the Onondaga County Department of Social Services.  (T. 346-347.)  Dr. Howard indicated that Plaintiff suffered from "chronic disease" and was capable of full time employment (35-40 hours per week) with no limitations.  (T. 346.)  He indicated on the form that Plaintiff's impairment was not expected to last for more than a year.  (*Id.*)

On March 21, 2013, Dr. Howard completed a "Physician's Medical Report."  (T. 347-348.)  Dr. Howard indicated Plaintiff was diagnosed with chronic back pain secondary to herniated nucleus pulposus, chronic pain, and history of lupus.  (*Id.*)  Dr. Howard indicated that objective findings included an MRI and Plaintiff was being treated with "oral analgesics."  (*Id.*)  Dr. Howard opined Plaintiff was "very limited," defined as able to perform one to two hours a day, in the areas of: walking; standing; pushing; pulling; bending; lifting; carrying; and climbing.  (T.348.)

On February 10, 2014, Kalyani Ganesh, M.D., performed an internal medicine examination and provided a medical source statement at the request of the Administration.  (T. 307-310.)  Dr. Ganesh opined that Plaintiff had "no gross limitations" for sitting, standing, or walking.  (T. 310.)  He opined Plaintiff had "mild limitation" for lifting, carrying, pushing, and pulling.  (*Id.*)

9

On March 10, 2014, Dr. Awayda completed an "Examination for Employability Assessment" for the Onondaga County Department of Social Services. (T. 335-336.) Dr. Awayda noted Plaintiff's diagnoses included cervical spine stenosis, lumber spine degenerative joint disease, and recovering drug use. (T. 335.) He opined Plaintiff was "moderately limited" in the areas of: walking; standing; sitting; using hands; stairs or other climbing. (T. 336.)[2] He opined Plaintiff was "moderately limited" in all areas of mental functioning. (*Id.*) He opined Plaintiff was "very limited" in the areas of: lifting, carrying; pushing, pulling, bending; and seeing, hearing, speaking. (*Id.*) He stated in a narrative that Plaintiff was "very limited in view of the [cervical] spine disease [and] pain, complicated by substance use." (*Id.*) Dr. Awayda checked the space "yes" indicating Plaintiff had a severe impairment which has lasted, or is expected to last, at least twelve months. (*Id.*) He wrote that Plaintiff had severe cervical spine disease and might need surgery. (*Id.*) Dr. Awayda checked the box "yes" indicating that Plaintiff's impairment would continue if her substance abuse ceased. (*Id.*) Dr. Awayda's contemporaneous treatment notations stated that he completed "paperwork . . . reflecting [Plaintiff's] restrictions and chronicity of her disease." (T. 720.)

On August 25, 2014, Dr. Awayda completed another "Examination for Employability Assessment" form. (T. 333-334.) Dr. Awayda noted Plaintiff's diagnoses included lupus, substance abuse, cervical spine disc disease, and chronic illness chronic eye infection. (T. 333.) He opined Plaintiff was "moderately limited" in the areas of: walking; standing; sitting; and stairs or other climbing. (T. 334.) He opined

---

[2] The form completed by Dr. Awayda does not define the terms used therein; however, the form contained three levels of limitations "no evidence of limitation," "moderate limitation," and "very limited." (T. 336.)

10

Plaintiff was "very limited" in the areas of: lifting, carrying; and pushing, pulling, bending. (*Id.*) He opined Plaintiff had "no limitations" in the area of: seeing, hearing, speaking, and using her hands. (*Id.*) Dr. Awayda checked the space "yes" indicating Plaintiff had a severe impairment which has lasted or is expected to last at least twelve months. (*Id.*) Dr. Awayda checked the box "yes" indicating that Plaintiff's impairment would continue if her substance abuse ceased. (*Id.*)

In formulating her physical RFC determination, the ALJ afforded Dr. Ganesh's opinion "great weight" reasoning she was a programmatic expert, her opinion was consistent with evidence in the record "which contain[ed] limited treatment for [Plaintiff's] lumbar spine, and showed minimal abnormalities in diagnostic imagines of her lumbar spine." (T. 24.)

The ALJ afforded "limited weight" to the opinions of Drs. Howard and Awayda. (T. 24.) The ALJ reasoned that their opinions were based on a cervical impairment she determined at step two to be non-severe. (T. 24.) The ALJ also reasoned that the opinions were "contradicted by the paucity of treatment for [Plaintiff's] lumbar disorder." (*Id.*) Lastly, the ALJ reasoned that the objective evidence in the record supported her conclusion that Plaintiff is capable of light work activity. (T. 25.)

Plaintiff argues the ALJ failed to provide good reasons for affording little weight to the opinions of Plaintiff's treating sources because 1) she relied on her mischaracterization of Plaintiff's cervical impairment and 2) the opinions were rendered in relation to Plaintiff's cervical spine and the ALJ rejected them on the basis that evidence was contradicted by limited treatment for her lumbar disorder. (Dkt. No. 15 at 12-21 [Pl.'s Mem. of Law].) Here, the ALJ not only improperly interpreted Plaintiff's

2014 cervical MRI, but also her 2010 lumbar MRI, and relied on her lay interpretations in weighing the opinions of Plaintiff's treating source and ultimately formulating an RFC.

The ALJ afforded "limited evidentiary weight" to the treating source's opinions because they were based on a "non-severe impairment." (T. 24.) Although the ALJ's step two determination could be deemed harmless error, because she proceeded with the sequential process, the ALJ's step two determination was based on a legal error which the ALJ in turn relied on in affording "limited weight" to the treating physicians' medical source statements.

Further, in formulating an RFC determination an ALJ must account for limitations imposed by both severe and non-severe impairments. *See* 20 C.F.R. § 416.945(a)(2) ("We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe [ ]' ... when we assess your [RFC]...."). Even if the ALJ properly determined that Plaintiff's cervical spine impairment was non-severe, the ALJ must still take that impairment into consideration when formulating the RFC. Further, because the ALJ must consider all of Plaintiff's impairments, severe and non-severe, in formulating her RFC determination, it was inapposite for the ALJ to discredit the entirety of the treating sources' medical statements providing limitations based on a combination of Plaintiff's impairments because one such impairment was deemed non-severe.

The ALJ focused almost exclusively on Plaintiff's lumbar impairment throughout her decision. The ALJ discounted the treating source statements based on the "paucity of treatment" regarding Plaintiff's lumbar disorder and "other objective evidence" in the record. (T. 24.) The ALJ cited to the following objective evidence, which she stated

12

supported the conclusion that Plaintiff could perform light work: Plaintiff's December 2010 lumbar MRI; physical exam conducted in March 2013; physical exam conducted in June 2013; emergency room visit in September of 2013; physical exam conducted in November 2013; physical exam conducted in January 2014; Dr. Ganesh's physical exam; and physical therapy records. (T. 25.)

In affording "great weight" to the opinion of Dr. Ganesh, the ALJ stated the doctor's opinion was consistent with Plaintiff's limited treatment for her lumbar spine and the "minimal abnormalities in the diagnostic images of her lumbar spine." (T. 24, *referring to* T. 207-208.)

Again, the ALJ improperly interpreted Plaintiff's objective medical imaging. Plaintiff's 2010 lumbar MRI did not contain findings of "minimal abnormalities." (T. 207-208.) The 2010 lumbar MRI showed "L4-L5 mild disc desiccation with bulging of the annulus fibrosis but without disc herniation or spinal stenosis; L5-S1 moderate desiccation of disc signal, [t]here is a broad-based disc herniation of the protrusion type with deformity of the thecal sac and descending S1 nerve roots bilaterally, left greater than right, no spinal stenosis." (T. 208.) The ALJ improperly relied on her lay interpretation of the lumbar MRI in weighing Dr. Ganesh's medical opinion.

Of note, ALJ then stated she "interpreted" Dr. Ganesh's medical source statement to be consistent with light work based on Plaintiff's limited treatment for her lumbar spine. (T. 24.) The ALJ provided no analysis to support her "interpretation" that Dr. Ganesh's medical source statement equated to light work. Therefore, the ALJ's evaluation, and ultimate reliance, on Dr. Ganesh's opinion was made in error. The ALJ

erroneously relied on her own lay interpretation of Plaintiff's 2010 lumbar MRI and also her own interpretation of the doctor's medical source statement without further analysis.

To be sure, where the evidence of record includes medical source opinions that are inconsistent with other evidence or are internally inconsistent, the ALJ must weigh all of the evidence and make a disability determination based on the totality of that evidence. *Barringer v. Comm'r of Soc. Sec.,* 358 F. Supp. 2d 67, 80 (N.D.N.Y. 2005); *See* 20 C.F.R. § 416.927(c)(2). Substantial evidence in the record may ultimately support a finding of not disabled, and such a determination is reserved to the ALJ; however, the ALJ is not a medical doctor and as such cannot interpret raw medical data. Here, the ALJ committed error in weighing the evidence in the record and formulating an RFC determination because the ALJ improperly weighed medical opinions against her lay interpretation of Plaintiff's cervical and lumbar MRIs.

In sum, the ALJ relied on her own lay interpretation of the cervical MRI in concluding that Plaintiff's cervical impairment was non-severe. The ALJ's error compounded from there. The ALJ then erroneously relied on her step two determination to discredit the opinion of Plaintiff's treating sources who provided limitations based on all of Plaintiff's impairments, not just her cervical spine impairment. The ALJ erred again in relying on her lay interpretation of Plaintiff's 2010 lumbar MRI as support for Dr. Ganesh's medical source statement which she in turn "interpreted" to equate to light work without further analysis. Remand is therefore necessary for an evaluation of Plaintiff's impairments, weighing of the medical opinion, and RFC determination, based on an accurate reading of the objective medical evidence in the record.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 15) is **GRANTED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 16) is **DENIED**; and it is further

**ORDERED** that this matter is **REMANDED** to Defendant, pursuant to 42 U.S.C. § 405(g), for further proceedings consistent with this Decision and Order.

Dated: June 30, 2017

*Bill Carter*

William B. Mitchell Carter
U.S. Magistrate Judge